IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CATHERINE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 19-0463-MU |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Catherine Harris brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 20. Upon consideration of the administrative

record, Harris's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I. PROCEDURAL HISTORY

Harris applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on October 26, 2016, alleging disability beginning on September 27, 2016. (Tr. 245-47). Her application was denied at the initial level of administrative review on January 31, 2017. (Tr. 185-89). On February 13, 2017, Harris requested a hearing by an Administrative Law Judge (ALJ). (Tr. 195-98). After a hearing was held on May 4, 2018, the ALJ issued an unfavorable decision finding that Harris was not under a disability from the alleged onset date, September 27, 2016, through the date of the decision, November 30, 2018. (Tr. 12-27). Harris appealed the ALJ's decision to the Appeals Council, and, on July 8, 2019, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

After exhausting her administrative remedies, Harris sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on November 12, 2019. (Docs. 10, 11). Both parties filed briefs setting forth their respective positions. (Docs. 13, 14). The parties waived oral argument. (Doc. 17).

---

[1] The parties waived oral argument in this case. Doc. 17.
[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II.  CLAIMS ON APPEAL

Harris alleges that the ALJ's decision to deny her benefits is in error for the following reasons: 1) the ALJ erred by failing to find that her impairment meets Listing 12.05B, and 2) the ALJ erred by making a diagnosis of borderline intellectual functioning. (Doc. 13 at p. 1).

## III. BACKGROUND FACTS

Harris was born on December 10, 1973 and was 42 years old at the time she filed her claim for benefits. (Tr. 34-35). Harris initially alleged disability due to migraine headaches, anxiety, depression, mood swings, acid reflux, and mental retardation. (Tr. 262). At the hearing, Harris testified that she is disabled due to migraine headaches, stress, and depression. (Tr. 41-42). Harris graduated from high school with a certificate of completion and was in special education classes. (Tr. 35). At the time she filed her application, she was not working but had previously worked 25 hours per week as a machine operator at a dry cleaner from 2008 to 2015. (Tr. 37-38). At the time of the hearing, Harris had two of her grown children living with her. (Tr. 36). In her Function Report, which was completed by her mother, it was reported that her daily activities include getting her son up for school, making sure he is dressed, and coming back to do her daily chores. (Tr. 279). The Function Report also stated that she sometimes needs reminders to take care of her personal grooming and to take her medicine. (Tr. 280-81). Harris testified at the hearing that she walks for exercise some days, she cooks sometime, she does housework, and she is able to grocery shop. (Tr. 43). Harris has a driver's license (oral test) and is able to drive. (Tr. 38, 46). She is able to make telephone calls on both a landline phone and cell phone but doesn't use other features

on the cell phone. (Tr. 40). She does not have a checking account and has never written a check. (Tr. 46). She can read, but not well. (Tr. 46). She enjoys spending time with others and attending church. (Tr. 283). She does not have problems getting along with people or authority figures, but she sometimes has problems completing tasks and following directions. (Tr. 284-85). She does not handle stress or changes in routine too well. (Tr. 285).

## IV. ALJ'S DECISION

After conducting a hearing, the ALJ made a determination that Harris had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 26-27). At step one of the five-step sequential evaluation, the ALJ found that Harris had not engaged in SGA since September 27, 2016, the alleged onset date. (Tr. 18). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that Harris had severe impairments of borderline intellectual functioning (with a history of some IQ scores indicative of intellectual disability, but with much higher adaptive functioning, a headache disorder, major depressive disorder, NOS, and anxiety, but that considering all of her impairments individually and in combination, Harris did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 17-20). After considering the entire record, the ALJ concluded that Harris had the RFC to perform medium exertion work, with some additional limitations: she could sit for a total of six hours and without interruption for two hours; could stand and walk for a total of six hours, without interruption for 1-2 hours; could lift and/or carry frequently up to 25 pounds and occasionally up to 50 pounds; had no limitations on the use of her extremities; could not

4

climb ladders, ropes, or scaffolds; could not work around unprotected heights or moving or hazardous machinery; could not drive commercial motorized vehicles; could only perform simple, unskilled, repetitive, and routine work in jobs or tasks that require little, independent judgment, with only routine changes in the work setting, with no multiple or rapid changes. (Tr. 20-24). After setting forth her RFC, the ALJ determined that Harris is capable of performing past relevant work as a laundry worker. (Tr. 24-26). Accordingly, the ALJ concluded that Harris was not disabled within the meaning of the Act. (Tr. 26-27).

## **V. DISCUSSION**

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC

5

>to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted).  "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm

"[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Harris alleges that the ALJ's decision to deny her benefits is in error for the following reasons: 1) the ALJ erred by failing to find that her impairment meets Listing 12.05B, and 2) the ALJ erred by making a diagnosis of borderline intellectual functioning. (Doc. 13 at p. 1).

A. **Listing 12.05B**

Harris argues that the ALJ erred by failing to find that her impairment meets Listing 12.05B because he made an incorrect factual finding that she did not have the requisite deficits in adaptive functioning. (Doc. 13 at pp. 5-10). The Commissioner argues that the ALJ did not err because Harris did not establish that she met all of the criteria required by Listing 12.05B. (Doc. 16 at pp. 4-12). Specifically, the Commissioner contends that the ALJ did not err because he correctly found that Harris did not establish deficits in adaptive functioning sufficient to meet Listing 12.05. (*Id.*).

The Listings describe certain medical findings and other criteria that are considered so extreme as to be presumptively disabling. *See* 20 C.F.R §§ 404.1525, 416.925. To establish disability under a Listing, a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that her condition satisfies the specific criteria of the listed impairment. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. §§ 404.1525(a-d), 416.925(a-d). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To "meet" Listing 12.05, the claimant must satisfy the diagnostic description in the introductory paragraph and one of four sets of diagnostic criteria found in paragraphs A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Listing 12.05's introductory paragraph requires the claimant to have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) an onset of impairment before age 22. *Id*. at § 12.05. Although adaptive functioning is not defined in the regulations, the Eleventh Circuit has favorably cited the description of adaptive functioning in the Social Security Administration's Program Operations Manual System ("POMS") as "'the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age,'" as well as the statement in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders that adaptive functioning means "'how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical.'" *Schrader v. Acting Comm'r of the Soc. Sec. Admin.*, 632 F. App'x 572, 576 & n. 3-4 (11th Cir. 2015) (quoting Soc. Sec. Admin., Program Operations Manual System, DI 24515.056(D)(2) (2012) and DSM-V 37 (5th ed. 2013)).

If the claimant satisfies the three requirements in the introductory paragraph, the claimant must then satisfy one of the four criteria listed in 12.05A through 12.05D. The Listing relevant here is 12.05B. Under Listing 12.05B, the claimant must present evidence of (1) a full scale IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in

8

two, of four broad mental functioning areas referred to as the "Paragraph B criteria"; and (3) evidence showing that the disorder manifested before age 22. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B. The Paragraph B criteria are the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. §§ 12.00E, 12.05B2. A marked limitation means a claimant's functioning is "seriously limited," and an extreme limitation means a claimant is "not able to function." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F2.

In this case, the ALJ found that Harris did not meet the requisites for Listing 12.05B because she failed to establish deficits in adaptive functioning sufficient to meet the Listing. Specifically, the ALJ found:

> In understanding, remembering, or applying information, the claimant has a mild limitation. In October 2016, her long-term and short-term memory were intact (Exhibit D9F). By her own admission, the claimant can speak and understand English, she can read and understand English, and she can write more than her own name in English. She completed 12 years of education at Southside High School in Selma, Alabama. Exhibit D 2 E, P. 1 & 3. She has Otis Lennon scores from the 11th grade with an SAI total ability score of 75, with an 81 for verbal ability and a 73 for non-verbal, which indicates abilities in the borderline intellectual functioning ability range, at age 19 years, 4 months. Exhibit D 8 E, P. 8. Otis Lennon scores in the 9th grade were actually higher, with a total school ability index of 79, with an 85 for verbal and a 77 for non-verbal, at age 17 years and 4 months. Exhibit D 8 E, P. 7. These scores do not support mental disability prior to age 22.
>
> In interacting with others, the claimant has only a mild limitation. Her function report revealed that she reported that she spends time with others talking every day; she goes to church on a regular basis; she has no problems getting along with family, friends, neighbors, or authority figures; and she has not been fired from a job because of problems getting along with others (Exhibit D4E).
>
> With regard to concentrating, persisting, or maintaining pace, the

9

> claimant has a moderate limitation. In October 2016, her neurologic systems review was negative; and her neurological exam revealed her cranial nerves were intact (Exhibit D9F); and her function report revealed that she is able to pay bills, count change, and handle a savings account (Exhibit D4E).
>
> As for adapting or managing oneself, the claimant has experienced only a mild limitation. In October 2016, she had appropriate judgment and insight (Exhibit D9F); and her function report revealed that she does her daily chores; she prepares her own meals; she is able to go out alone on occasion; she drives; and she goes shopping in stores for food (Exhibit D4E).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Tr. 19).

Harris disagrees with the ALJ's conclusions regarding her adaptive functioning and points out testimony that she contends show she has more limitations than these. Having reviewed Harris's testimony at the hearing before the ALJ and the Function Report which shows that Harris maintained employment for periods in the past, that she can handle her own personal care, household chores, some meal preparation, and grocery shopping, that she has a driver's license and is able to drive, that she has close personal relationships and enjoys talking with family and friends and attending church, that she can understand, remember, and apply simple information and instructions, and can read and write at a simple level , the Court finds that, while there is some evidence that supports Harris's argument, there is substantial evidence to support the ALJ's determination that Harris did not establish that she has deficits in adaptive functioning sufficient to meet Listing 12.05B. It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is

supported by substantial evidence and based on proper legal standards. Accordingly, the Court concludes that the ALJ did not err in finding that Harris does not meet Listing 12.05B.

**B. Borderline Intellectual Functioning**

Harris argues that the ALJ also erred by finding that she had a severe impairment of "borderline intellectual functioning (with a history of some IQ scores indicative of intellectual disability, but with much higher adaptive functioning.)" Harris argues that this finding was akin to the ALJ improperly making a diagnosis of borderline intellectual functioning. (Doc. 13 at p. 10). As pointed out by the Commissioner, Harris's argument fails for two reasons. First, "[t]he Social Security Administration has noted that standardized intelligence tests can assist in verifying the presence of intellectual disability but form only part of the overall assessment and should be considered in conjunction with developmental history and functional limitations." *Nichols v. Comm'r, Socl Sec. Admin.*, 679 F. App'x 792, 795-96 (11th Cir. 2017) (citing § 12.05(d)(6)(a)). Even a valid IQ score is not necessarily conclusive of intellectual disability "'where the IQ score is inconsistent with other evidence in the record on the claimant's daily living activities and behavior.'" *Nichols*, 679 F. App'x at 796 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). Here, the ALJ found that Harris's level of adaptive functioning was not in line with her IQ scores. The Court finds that this conclusion was supported by substantial evidence, including the opinion of the State agency consulting psychiatrist, Dr. Peter Sims, and the evidence of Harris's daily activities and past work experience. *See, e.g., Nichols*, 679 F. App'x at 796-97 (Eleventh Circuit concluded that the ALJ did not err in finding claimant's IQ score of 59 invalid where her range of

11

activities and accomplishments, including reading and understanding English, having a driver's license, completing high school with a certificate, having a history of some unskilled work, raising two children, and handling money, were inconsistent with the IQ results); *Branch v. Berryhill,* Civ. A. No. 16-0499-N, 2017 WL 1483534, at *4-6 (S.D. Ala. Apr. 25 2017) (finding that the ALJ did not err in finding that claimant's IQ score of 60 was invalid where, even though she was in special education classes through eighth grade (the highest grade completed) and could not functionally read, she could feed and take care of her pets, manage her own personal care, help her husband cook, watch television, wash clothes, go to the grocery store with her husband, talk to her daughter on the phone, and spend time on the computer).

Second, even if the ALJ's designation of borderline intellectual functioning versus a finding of intellectual disability was incorrect, Harris has failed to show that such a finding impacted the ALJ's final decision that she was disabled and, therefore, failed to show that she was harmed. Because the ALJ took Harris's mental limitations into account when setting forth her RFC, any error in the naming of her mental impairment was harmless.

## **CONCLUSION**

The Court finds that the ALJ's Decision that Harris is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **29th** day of **September, 2020**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**